**SIGNED this 3 day of December, 2018.**



```
_____
        John T. Laney, III
    United States Bankruptcy Judge
```

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Bankruptcy Case No. |
| **KENNETH E. BROWNLEE**, and ) | 17-70283-JTL |
| **JANICE J. BROWNLEE**, ) | |
| ) | Chapter 7 Proceeding |
| Debtors. ) | |

---

| | |
|---|---|
| **WALTER W. KELLEY**, Trustee, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding |
| ) | |
| **FIRST COMMUNITY BANK,** a division ) | No. 18-07005 |
| of Synovus Bank**,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION GRANTING
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The above styled case came before the Court on cross-motions for summary judgment. (Pl.'s Mot. for Summ. J., A.P. No. 10; Def.'s Mot. for Summ. J., A.P. No. 9). In this case, the Chapter 7 Trustee, Walter Kelley, asserts an action under 11 U.S.C. § 547 to avoid a transfer made from the Debtors to the Defendant, First Community Bank ("First Community"). First Community's primary defense is that the alleged transfer occurred outside of the ninety (90) day look-back period of 11 U.S.C. § 547(b)(4). The parties choose to address this dispositive issue with motions for summary judgment before conducting discovery. (*See* Sched. Order, A.P. No. 8).

Specifically, the parties seek summary judgment on whether First Community's acquisition of a judgment lien on the Debtors' real property occurred within 11 U.S.C. § 547(b)(4)'s look-back period. The Court can answer this question by addressing a question of Georgia law: whether an unrecorded judgment issued by a Georgia court transfers a lien on the judgment debtor's real property.

The parties briefed the issue and made oral arguments at a hearing on the motions. The Court took this matter under advisement. Having carefully considered the arguments and reviewed the applicable law, the Court determines that under Georgia law the entry of a judgment does not transfer a lien on a judgment debtors' real estate; rather, a judgment lien encumbering real property is only created upon recording the judgment in the applicable county's real estate records. Accordingly, the Trustee is entitled to summary judgment on whether the transfer occurred within 11 U.S.C. § 547(b)(4)'s look-back period.

I.     **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, states a court may grant summary judgment "if the movant

2

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Where "there are no disputed facts and the only issue is the application of law to the undisputed facts, a court may decide at the Rule 56 stage that one side or the other is entitled to judgment." *Harris v. Liberty Cmty. Mgmt.*, 702 F.3d 1298, 1303 (11th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

This is the circumstance here. The parties have stipulated all of the facts relevant to the issue before the Court. (*See* Joint Stipulation of Fact, A.P. No. 6 [herein "Joint Stipulation"]). The application of the law to those stipulated facts is the only remaining dispute between the parties. Therefore, this issue is well suited for disposition by summary judgment.

**II.    STIPULATED FACTS**

The Debtors filed a Chapter 11 petition on March 21, 2017. (Pet., Bankr. Doc. No. 1). This Court entered an order converting the case to a Chapter 7 proceeding on March 7, 2018. (Order Granting Mot. to Convert Case, Bankr. Doc. No. 125). Prior to filing this case, the Debtors owned real estate in two Georgia counties, Worth and Tift.

On December 7, 2016, the Superior Court of Tift County entered a Consent Order and Final Judgment in favor of First Community Bank against the Debtors. (Joint Stipulation, ¶ 1). The Judgment was entered one-hundred four (104) days before the petition date.

On December 22, 2016, the Clerk of the Superior Court of Tift County recorded a Writ of *Fieri Facias* (" the Fi. Fa.") in Tift County's General Execution Docket. (Joint Stipulation, ¶ 4). This Fi. Fa. was recorded fifteen (15) days after the entry of the judgment and eighty-nine (89) days before the petition date.

On January 3, 2017, the Clerk of the Superior Court of Tift County re-recorded the Fi. Fa. to correct the spelling of the Debtors' last name. (Joint Stipulation, ¶ 7). The Fi. Fa. was

3

recorded twenty-seven (27) days after the entry of the judgment and seventy-seven (77) days before the petition date.

On January 25, 2017, the Clerk of the Superior Court of Worth County recorded the Fi. Fa. in its General Execution Docket. (Joint Stipulation, ¶ 11). The Fi. Fa. was recorded four-nine (49) days after the entry of the judgment and fifty-five (55) days before the petition date.

### III.   CONCLUSIONS OF LAW

The timing of the judgment's entry and its recording is important in an avoidance action because "[w]hen a transfer is 'made' for § 547(b)(4)(A) purposes depends on when it is perfected." *Gordon v. Novastar Mortg., Inc. (In re Hedrick)*, 524 F.3d 1175, 1180 (11th Cir. 2008). Generally, a transfer occurs "at the time such transfer takes effect between the transferor and the transferee." 11 U.S.C. § 547(e)(2)(A). If the transfer is not perfected within thirty (30) days of taking effect, however, the Code considers the point of perfection as the time the transfer takes place. Id. § 547(e)(2)(B). For transfers pertaining to real property, 11 U.S.C. § 547 defines perfection as the point at which a *bona fide* purchaser could not take an interest in the property that is superior to the transferee's interest. Id. § 547(e)(1)(A). Under Georgia law, a *bona fide* purchaser cannot take an interest superior to a prior recorded security interest. *See Williams v. Smith*, 128 Ga. 306, 314 (1907).

Having framed the basic workings of 11 U.S.C. § 547 and the stipulated facts, the Court can address the issue in this case. Ultimately, resolution depends on when the judicial lien encumbering the Debtors' real property "took effect" between First Community and the Debtors under Georgia law.[1] Regarding the real estate in Tift County, if the judicial lien "took effect"

---

[1] Though 11 U.S.C. § 547 provides when a transfer occurs for the purpose of an avoidance action, its references to when the transfer "takes effect between the transferor and the transferee" and to when a transfer is perfected is a matter of state law. *See Butner v. U.S.*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state

4

when the Tift County Superior Court entered the judgment then, because the judgment was recorded within 30 days, the date of the transfer for the purposes of the preference action is December 7, 2016.  This would place the transfer outside the ninety (90) day look-back period and the First Community would be entitled to summary judgment on the claim.  If, however, the entry of the judgment did not create a judicial lien encumbering the Debtors' real property, but rather the recording of the Fi. Fa. created the lien, the transfer occurred within the applicable look-back period and the Trustee is entitled to summary judgment on the issue.  First Community concedes that even under its interpretation of the law the attachment of the judicial lien on the real property in Worth County, Georgia occurred within the applicable look-back period.[2]

The interest in property conveyed by a Georgia court's entry of judgment is a matter governed by Georgia law and primarily involves two Georgia statutes.  O.C.G.A. § 9-12-80 states: "[a]ll judgments obtained in superior courts… shall bind all the property of the defendant in judgment, both real and personal, from the date of such judgment except as provided in this Code."  O.C.G.A. § 9-12-86(b) states: "No judgment… shall in any way affect or become a lien upon the title to real property until the judgment, decree, or *writ of fieri facias* is recorded in the office of the clerk of the superior court of the county in which the real property is located."  At first glance, interpreting these two statutes creates some friction.  On one hand, O.C.G.A. § 9-12-80 clearly states that the entry of a judgment "binds" the judgment debtor's real property; but on the other, O.C.G.A. § 9-12-86(b) states the judgment does not "in any way affect or become a lien" on real property without recording.

---

law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.")

[2] First Community argues this is so because, although the entry of the judgment transferred a judicial lien, the transfer was not perfected by recording within thirty (30) days; thus, 11 U.S.C. § 547(e)(2)(B)—not 11 U.S.C. § 547(e)(2)(A)—governs the date of the transfer.

Although case law interpreting these statues does little to address this ambiguity, two Georgia appellate decisions provide some direction. In *Morris-Weathers* the Georgia Supreme Court was tasked with determining the priority between three competing judgment creditors, each of which obtained its judgment in the same term of court. *National Bank of Ga. v. Morris-Weathers Co.* 248 Ga. 798 (1982). One of the judgment creditors recorded its judgment before the other creditors and argued it accordingly had superior priority in the judgment debtor's real estate.

The *Morris-Weathers* Court found only one case that marginally supported this argument, *In re Tinsley*. In that case, the District Court of the Middle District of Georgia held an unrecorded judgment did not attach to real property even after the judgment debtor appealed the entry of the judgment. *In re Tinsley*, 421 F. Supp. 1007, 1011 (M.D. Ga. 1976) aff'd 554 F.2d 1064 (5th Cir. 1977). In coming to this conclusion, the *Tinsley* Court determined O.C.G.A. § 9-12-87[3] and § 9-12-80 conflicted with § 9-12-86(b).[4] Because O.C.G.A. § 9-12-86(b) was more recently passed, the *Tinsley* Court held the statute repealed the others and controlled the issue. *Id.* 421 F. Supp. at 1011. The *Morris-Weathers* Court, however, found no contradiction between the statutes. Instead the court held that "for priority purposes, the judgment [upon recording] relates back to the date of its rendition and shall be considered of equal date with other perfected

---

[3] O.C.G.A. § 9-12-87 provides:

    (a) All judgments signed on verdicts rendered at the same term of court shall be considered, held, and taken to be of equal date.
    (b) In the case of judgments signed on verdicts rendered at the same term of the court, no execution shall be entitled to any preference by reason of being first placed in the hands of the levying officer.

[4] The *Morris-Weathers* and *Tinsley* decisions cite the statues as previously codified in the 1933 code. The statues, as currently codified, remain substantively the same as the earlier codifications. For clarity, this opinion will cite the statute as currently codified, even where the cases cite the 1933 Code.

liens arising from judgments on verdicts rendered at the same term of court." *Morris-Weathers*, 248 Ga. at 800.

First Community seemingly argues *Morris-Weathers* overruled *Tinsley* and that the Trustee's reliance on *Tinsley* is misplaced. This Court, however, does not read *Morris-Weathers* in such a manner. The *Morris-Weathers* Court only disagrees with the *Tinsley* Court concerning whether O.C.G.A. § 9-12-86(b) conflicted with § 9-12-80 and § 9-12-87. *See Morris-Weathers*, 248 Ga. at 800 ("We do not agree that the effect of [O.C.G.A. § 9-12-86] is to repeal either [§ 9-12-87] or [§ 9-12-80]. While it is true [O.C.G.A. § 9-12-86] provides that all laws or parts of laws in conflict are repealed, …we find no conflict which requires a repeal.") (internal citation omitted). It does not follow that *Morris-Weathers* rejected or overruled the holding in *Tinsley*. In fact, the issues in the two cases were so dissimilar that—even had the court expressly rejected the holding in *Tinsley*—it would have arguably been dictum. *Morris-Weathers* only concludes that courts must give effect to each statute.

The *Morris-Weathers* decision also provides other relevant reasoning to the issue before this Court. In finding O.C.G.A. § 12-9-86 did not conflict other law, the *Morris-Wathers* Court concluded that the statute's purpose was to protect third-party purchasers without notice of the judgment lien. Specifically, the Court stated: "[t]he purpose of the statue is to protect third persons acting in good faith and with notice by requiring that any judgment, decree or order must be recorded before it will in any way affect or become a lien on title to real property." *Id.* The Georgia Court of Appeals in *Watkins v. Citizens & Southern Nat'l Bank* cited this language while determining whether a judgment creditor, which had not recorded an expired judgment could revive the judgment under O.C.G.A. § 9-12-61. 163 Ga. App. 468 (1982). The *Watkins* Court concluded a judgment creditor could revive an unrecorded judgment, reasoning:

7

> [the e]ntry of a judgment or any writ of *fieri facias* issued pursuant to any such judgment upon the general execution docket or other applicable records is simply the process of perfecting a lien against the real property of the defendant. The fact that appellee did not record its original judgment on the general execution docket 'does not mean that the judgment does not exist.'

*Id.* at 468 (quoting *Morris-Weathers*, 248 Ga. at 800) (citations omitted).

Citing this language, First Community contends the *Morris-Weathers* and *Watkins* Courts reasoned O.C.G.A. § 9-12-86 should only apply to third parties; that is, the statute only requires recordation to enforce a lien against a third-party. First Community is not alone in making this interpretation of those cases. The Bankruptcy Court in the Northern District of Georgia in *In re Andrews* likewise read those cases to hold O.C.G.A. § 9-12-86(b) "protects *only* third persons acting in good faith and without notice." *Andrews v. Adcock (In re Andrews)*, 500 B.R. 214, 220 (Bankr. N.D. Ga. 2013) (citing *Morris-Weathers*, 248 Ga. at 799) (emphasis added). The *In re Andrews* Court accordingly concluded that, because the statute only protects third parties, "the absence of recordation does not eliminate the existence or effect of an unrecorded judgment against the interest of a judgment debtor, as opposed to the interest of third parties, in the property." *In re Andrews*, 500 B.R. at 220.

Again, this Court reads *Morris-Weathers* and *Watkins* differently. Undoubtedly, these cases state the *purpose* of O.C.G.A. § 9-12-86(b) is to protect third parties. That does not mean, however, that the statute's *effect* only extends to third parties. Indeed, the statute explicitly states the judgment "shall [not] in *any way affect or become a lien* upon the title to real property." O.C.G.A. § 9-12-86(b) (emphasis added). While the statute's purpose was relevant to the issues before the *Morris-Weathers* and *Watkins* courts, the holding in those cases did not modify O.C.G.A. § 9-12-86(b)'s clearly stated effect—that a judgment does not "in any way" become a lien on real estate until it is recorded. In fact, a close reading of *Morris-Weathers* reveals the

8

Georgia Supreme Court understood O.C.G.A. § 9-12-86(b) to require recording a judgment to create a lien on real estate. After recognizing that a judgment exists regardless of recording, the Court discussed the point at which the judgment attaches to real property; the Court stated: "The period between the taking of the judgment and its recording is merely a period of dormancy. *When the judgment is recorded as provided for in the code, the dormancy ends and the judgment becomes effective as a lien on real estate.*" *Morris-Weathers*, 248 Ga. at 799 (emphasis added). The court in these sentences was not discussing the point at which a judgment lien is perfected against third parties. It was explaining how "recording as provided for in the code" makes the judgment "effective as a lien on real estate." Nothing in the opinion indicated that during the period of "dormancy"—that is, the period between the judgment's entry and its recording—the judgment creditor holds a lien encumbering the judgment debtor's real estate.

The Court's interpretation of O.C.G.A. § 9-12-86(b) does not, as First Community argues it would, make O.C.G.A. § 9-12-80 superfluous. First, although O.C.G.A. § 9-12-80 states a judgment "binds all the property of the defendant in judgment, both real and personal," this provision only applies "except as otherwise provided in this Code." The statute expressly acknowledges its limitations and O.C.G.A. § 9-12-86(b) provides an exception to that general rule. *See Pettigrew v. Hoey Constr. Co. (In re NotJust Another CarWash)*, 2007 Bankr. LEXIS 979 note 4 (Bankr. N.D. Ga. Feb. 16, 2007) (finding O.C.G.A. § 9-12-86(b) provides an exception authorized by the clause "except as otherwise provided" in O.C.G.A. § 9-12-80). Secondly, this interpretation still gives meaningful effect to O.C.G.A. § 9-12-80. The statute recognizes that Georgia law provides creditors holding an unrecorded judgment unique rights in the debtor's real property, though those rights are short of being a lien. For example, O.C.G.A. § 9-12-82 provides a thirty (30) day grace-period during which a judgment creditor may record its

9

judgment and be protected against the intervening interest of a *bona fide* purchaser. Additionally, O.C.G.A. § 9-12-88 prevents a judgment debtor from alienating property after an appeal of the judgment is filed. These are rights Georgia law gives to a judgment creditor concerning the judgment debtor's real property that are unavailable to a non-judgment creditor. Recognizing these rights while requiring proper recording to create a judicial lien on real estate gives effect to O.C.G.A. § 9-12-80. Further, recognizing these rights may shed some light on why the Georgia code uses the phrase "binds all the property" in O.C.G.A. § 9-12-80, though uses the phrase "become a lien" in § 9-12-86(b) and the phrase "create a lien" in other statutes.[5]

Frist Community also argues, citing O.C.G.A. § 9-12-85, that "the perfection statute"—presumably § 9-12-86(b)—should not be interpreted to affect the entry of the judgment between the Debtors and First Community. O.C.G.A. § 9-12-85 states: "Nothing in Code Sections 9-12-81 and 9-12-82 shall be construed to affect the validity or force of any deed, mortgage, judgment, or other lien of any kind as between the parties thereto." As previously discussed, O.C.G.A. § 9-12-81 and O.C.G.A. § 9-12-82 pertain to the rights of judgment creditors against *bona fide* purchasers. Those statutes are not applicable here; thus, O.C.G.A. § 9-12-85 does not support the proposition for which First Community cites it. Moreover, the Court's conclusion here does not in any way affect the entry of the judgment. The judgment exists regardless of recording and is a final adjudication of the dispute between the parties. That does not mean, however, that the judgment becomes a lien on real property prior to being recorded.

To be clear, the Court is not holding that a judgment fails to create an enforceable obligation between the judgment debtor and creditor. Such a ruling would certainly contravene settled Georgia law. The Court only holds that the entry of the judgment—without subsequent

---

[5] *E.g.*, O.C.G.A. §§ 9-12-81(b), 82. 84(a).

recordation—does not create a judicial lien on the judgment debtor's real property. Certainly, Georgia law gives judgment creditors specific rights to the judgment debtor's real property. The most important of those rights is the ability to record the judgment to create a judicial lien on the debtor's real property. These rights, however, do not create a lien on real property. Under Georgia law, only recording a judgment creates a judicial lien on real property.

## IV.   CONCLUSION

The Trustee seeks to avoid the transfer of a judicial lien on real property between the Debtors and First Community. He seeks summary judgment on the issue of whether that transfer took place within the look-back period provided by 11 U.S.C. § 547(b)(4)(A). Under Georgia law, a judicial lien on real property is created when the judgment is recorded in the applicable real estate records. Prior to recording, the entry of a judgment "in no way affect[s] or become[s] a lien on title to real property." O.C.G.A. 9-12-86(b). The parties have stipulated that the judgment was recorded within the look-back period. Therefore, the Court concludes the Trustee is entitled to summary judgment on this issue.